# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-2869

_____

| | | |
|---|---|---|
| Conseco Life Insurance Company, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| Eric Williams, individually and in his | * | |
| capacity as executor of the Estate of | * | |
| Nikki Williams, Deceased, | * | Appeal from the United States |
| | * | District Court for the |
| Defendant - Appellant, | * | Eastern District of Arkansas. |
| | * | |
| Ellen Buckley, | * | |
| | * | |
| Defendant - Appellee, | * | |
| | * | |
| Harold Williams, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted: June 16, 2010
Filed: September 3, 2010

_____

Before MELLOY, HANSEN, and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

Conseco Life Insurance Company ("Conseco") issued a life insurance policy ("policy") to Niki Williams[1] ("Niki"), who died following a battle with cancer. Niki's sister, Ellen Buckley, the named beneficiary, and Niki's sons, Eric and Harold Williams (collectively, "appellants"), the prior beneficiaries, both claimed the proceeds of the policy. Conseco interpled the $100,000 insurance proceeds pending the district court's[2] resolution of the dispute. Buckley claimed that she, using a power of attorney, ultimately named herself beneficiary of the policy at Niki's behest. The appellants denied this and claimed that Buckley used undue influence to procure the policy change. Both sides filed cross summary judgment motions. The district court granted Buckley's motion based on witness affidavits, the record, and the holding of *Primerica Life Ins. Co. v. Watson*, 207 S.W.3d 443 (Ark. 2005). The appellants appeal, arguing that the district court abused its discretion in applying the *Primerica* hearsay exception to allow certain affidavits to come in as evidence to determine Niki's intent and erred in granting summary judgment while material disputed facts remain. For the reasons stated below, we affirm.

## I. *Background*

On August 15, 1994, Niki applied for a life insurance policy with Conseco, requesting $100,000 and naming her sons Eric Williams ("Eric") and Harold Williams as primary beneficiaries of the policy. Niki subsequently developed breast cancer and underwent treatment from October 2005 through the beginning of March 2006. Following her discharge from the hospital Niki lived with Eric until March 28, 2006. On March 28, following a disagreement between Eric and Niki, Eric returned Niki to the house that she owned with her boyfriend. Niki lived at her house in April 2006.

---

[1]The district court used the name "Nikki" Williams in its caption. However, it is undisputed that Conseco issued the policy in question to "Niki" Williams. Therefore, we will refer to the insured/deceased by her correct name, Niki Williams.

[2]The Honorable Susan Webber Wright, United States District Judge for the Eastern District of Arkansas.

Sometime in early May, Niki was briefly hospitalized and upon release Niki lived at Buckley's house until Niki's death on June 18, 2006.

Prior to Niki's death, Buckley and Niki took several steps ultimately designed to change the beneficiary of Niki's policy from the appellants to Buckley. First, Buckley asked Niki's insurance agent, Jarvis Thorn, for instructions on how to properly change the beneficiary designation. Conseco subsequently sent Buckley a change in ownership form. Niki, however, allegedly had limited use of her extremities and could not sign the form. Conseco would not permit the insurance forms to be signed with an "X." On the advice of Conseco, Niki executed a power of attorney (POA) in favor of Buckley. This POA allowed Buckley to change the ownership of the policy, which then empowered Buckley to change the beneficiary designation of the policy from her nephews to herself.

Niki executed the POA naming Buckley as her attorney-in-fact on May 13, 2006. Buckley's daughter, Sherita Smith, and Dr. William L. Rutledge witnessed Niki's execution of the POA. Buckley, using this POA, then changed the ownership of the policy from Niki to herself on May 19, 2006. Conseco received the change of ownership form on May 24, 2006, and subsequently approved the change in writing. On June 5, 2006, Buckley, as owner of the policy, then changed the beneficiary designation from the appellants to Buckley. Conseco received the change-in-beneficiary form on June 7, 2006, and later approved the change.

On June 18, 2006, Niki died. On July 17, 2006, Conseco received a claim from Buckley for the proceeds of the policy. Conseco also received a written demand from the appellants not to pay Buckley the proceeds. By letter dated August 8, 2006, Conseco informed Buckley that the current beneficiary of record on the insurance policy was not valid under Arkansas law, citing Arkansas Code Annotated

-3-

§ 28-68-410.[3] Buckley contends Conseco relied upon this statute in error, however, because Buckley did not use her POA to make herself beneficiary; rather, she used the POA to change ownership, which is permitted under Arkansas law. Then, as owner, she properly changed the beneficiary.

According to Buckley, before her death Niki expressed to several people her desire to change the policy beneficiary designation from the appellants to Buckley. In support of her summary judgment motion, Buckley submitted three affidavits—from Robert McGruder, Shelton Pitre, and Thorn—to support Buckley's contention that Niki desired the change in beneficiary.

According to his affidavit, Pitre (Niki's boyfriend) stated that the appellants "were very neglectful to their mother and had treated her dismissive [sic] for many years." He stated that Buckley was Niki's only sibling and that Niki told him "that she wanted to name Ellen Buckley as beneficiary of her life insurance policy and that under no circumstances were her sons, Eric Williams and Harold Williams, to receive any of this money." Pitre also stated that Niki told him that Eric "had become irate and

_____

[3]Section 28-68-410 provides in pertinent part:

In a statutory power of attorney, the language granting power with respect to insurance and annuity transactions empowers the agent to: . . .

> (4) designate the beneficiary of the contract, but an agent may be named a beneficiary of the contract, or an extension, renewal, or substitute for it, only to the extent the agent was named as a beneficiary under a contract procured by the principal before executing the power of attorney; . . .

> (10) change the beneficiary of a contract of insurance or annuity, but the agent may not be designated a beneficiary except to the extent permitted by paragraph (4)[.] . . .

-4-

very angry with her because she was not going to change her will to make him beneficiary so Eric dropped her off at her house with her clothes in a garbage bag." Pitre testified that the appellants were notified that Niki was near death and yet neither came to see her before she died.

Similarly, McGruder, who represented that he had known Niki for many years, asserted in his affidavit that Niki expressly stated to him that she was embarrassed about the way the appellants had treated her for many years. Niki told McGruder that she had tried to live with Eric following her discharge from the hospital in March 2006 but that Eric constantly badgered her to change her will and to sign over all her property to her sons. McGruder stated that he always told Niki not to tell the appellants that she intended to change her policy beneficiary for fear of them becoming angry and retaliating against her. McGruder reported that Niki told him that Eric became irate and very angry about her not changing her will. McGruder testified that Eric took her in his car over to her house and dropped her off with her clothes in a garbage bag. Finally, McGruder stated that after the March 2006 incident with Eric, Niki called and told him "that she for sure was going to change the beneficiary on her life insurance [policy] to Ellen Buckley."

Thorn's affidavit stated that he recalls having a conversation with Niki in April 2006 and that she requested that her beneficiary be changed on her policy to Buckley "because her son had given her many problems and did not take care of her." Thorn testified that Niki's voice was well known to him and that she sounded alert and intelligent at the time she made the declaration.

The appellants moved for summary judgment on grounds that the POA does not state that Niki intended, or even knew, that Buckley would acquire Niki's $100,000 insurance proceeds and that absent express intention an agent may not utilize her position for her personal benefit in a substantially gratuitous transfer.

-5-

Buckley filed a cross motion for summary judgment with the supporting affidavits of Thorn, Pitre, and McGruder attached. Buckley argued that she changed ownership of Niki's policy to herself using the POA according to the express wishes of Niki. Once she obtained ownership of the policy, Buckley contended, she named herself beneficiary of the policy not as an agent of Niki but in her own capacity as owner of the policy, which is not prohibited by law.

The district court granted Buckley's motion for summary judgment finding that—based in part on the affidavits—Niki intended to change the beneficiary and there was no evidence of overreaching; the appellants failed to meet Buckley's proof with proof because mere suspicions were not evidence; the appellants' rebuttal was illogical; and there was no evidence that Niki was incompetent.

## II. *Discussion*

On appeal, the appellants argue that the district court erred in granting summary judgment to Buckley for two primary reasons. First, the appellants contend that the district court abused its discretion by admitting and crediting the affidavits that Thorn, Pitre, and McGruder submitted. The appellants argue that these affidavits are impermissible parol evidence and therefore not competent evidence to overcome Buckley's presumption of overreaching beyond a reasonable doubt. The appellants seek to distinguish the holding in *Primerica*, which addressed the issue of whether such parol evidence may be admitted. *See* 207 SW.3d at 447–48. The parties disagree sharply about the precise meaning of the *Primerica* holding.

Buckley asserts that the holding of *Primerica* is directly on point and controlling. Relying upon that holding, Buckley asserts that Niki made statements to many people indicating her intention to change the beneficiary designation from her sons to Buckley, as evidenced by the admissible affidavits. Buckley contends that the district court properly admitted the statements that Niki made indicating her intention to change her life insurance policy as a hearsay exception pursuant to *Primerica*.

Second, the appellants argue that disputed facts remain, making summary judgment improper.

We review summary judgment motions de novo. *Johnson v. AT&T Corp.*, 422 F.3d 756, 760 (8th Cir. 2005). "Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Thomas v. Union Pac. R.R. Co.*, 308 F.3d 891, 893 (8th Cir. 2002). We "may affirm the district court on any basis supported by the record." *Id.* "We review the admission of evidence for an abuse of discretion. Even if the district court erred in admitting the evidence, we will not reverse if the admission of the evidence was harmless." *United States v. Parish*, 606 F.3d 480, 487 (8th Cir. 2010) (internal quotations and citation omitted).

## A. *Parol Evidence*

Ordinarily, the party challenging the validity of an instrument—here, the appellants—is required to prove by a preponderance of the evidence that the grantor lacked mental capacity or was unduly influenced at the time the instrument was executed. *See Looney v. Estate of Wade*, 839 S.W.2d 531, 533 (Ark. 1992). In this case, however, both parties agree that Buckley has the burden of proving the validity of the policy beneficiary change beyond a reasonable doubt because she procured the making of the instrument and is a beneficiary. *See Noland v. Noland*, 956 S.W.2d 173, 175 (Ark. 1997) (holding that where the beneficiary procures the making of the instrument and benefits from that procurement, a rebuttable presumption of undue influence arises which places on the beneficiary the burden of proving beyond a reasonable doubt that the grantor enjoyed both the required mental capacity and freedom of will). The issue we consider is whether Buckley submitted sufficient, unrebutted admissible evidence to meet her burden.

The POA itself does not contain language indicating Niki's intentions regarding the beneficiary of her insurance policy. Therefore, the district court relied on the affidavits the parties submitted, including the three in question by Buckley. These three affidavits are undoubtedly parol evidence and therefore hearsay, which is normally excluded under either the Federal Rules of Evidence 801(c)[4] and 802[5] or the Arkansas Rules of Evidence 801(c) and 802, which match the Federal Rules in substance.

However, this case—decided under Arkansas law—represents an exception to general rule. Some states do require evidence of intent to be in writing if it relates to gifting in contracts, such as the contract in question. *See, e.g., Harrison v. Harrison*, 105 S.E.2d 214, 218 (Ga. 1958); *Fender v. Fender*, 329 S.E.2d 430, 431 (S.C. 1985). Arkansas does not. The Arkansas Supreme Court has interpreted Arkansas Rule of Evidence 803(3)[6] to allow the admission of witness statements that recall hearing a

---

[4]Rule 801(c) provides that hearsay "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

[5]Rule 802 provides that "[h]earsay is not admissible except as provided by these rules or by other rules prescribed by the Supreme Court pursuant to statutory authority or by Act of Congress."

[6]Arkansas Rule of Evidence Rule 803(3) provides that the following is not excluded by the hearsay rule, even though the declarant is available as a witness:

> [a] statement of the declarant's then existing state of mind, emotion, sensation, or physical condition, such as intent, plan, motive, design, mental feeling, pain, and bodily health, but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.

deceased declarant speaking about the deceased's intention to change her insurance policy beneficiary in the future. *Primerica*, 207 S.W.3d 447–48. These statements are an exception to the hearsay rule and the parol evidence is therefore admissible to prove the truth of the matter asserted and can be used to prove the intent of the unavailable, deceased declarant. *Id.*

In *Primerica*, a husband purchased a life insurance policy naming his first wife as beneficiary. *Id*. at 445. When the husband remarried after divorce, he told his second wife that he intended to change the policy to make her the beneficiary. *Id*. He then attempted to change the policy but failed. *Id*. At trial after the husband's death, the court permitted testimony regarding oral statements indicating the husband's intention to change the beneficiary to his second wife. *Id*. at 447. The Arkansas Supreme Court reviewed this decision and stated that:

> "Hearsay" is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Ark. R. Evid. 801(c). As a rule, hearsay is not admissible except as provided in our rules of evidence. *See* Ark. R. Evid. 802. Exceptions to this rule are found in Ark. R. Evid. 803 and 804. The exception found in Rule 803(3) is applicable in this case .
> . . .
>
> Under Rule 803(3), a declarant's statement that he or she intends to do something in the future is admissible to prove the truth of the matter asserted. *See Wyles v. State*, 357 Ark. 530, 182 S.W.3d 142 (2004); *Nicholson v. State*, 319 Ark. 566, 892 S.W.2d 507 (1995). Gary's statement to Ronda, "Well, I guess I need to change the beneficiary on my policy, since I'm going to keep you," falls squarely within this exception, as it reflected Gary's intention to change the policy. Similarly, the statement that Gary made to his stepson, Chris Bargiel, that he was buying insurance and that Ronda would be the beneficiary, falls within this exception. The trial court did not err in allowing testimony about these statements.

Nor did the trial court err in allowing Ronda to testify about Gary's conversation to a Primerica representative, in which she heard Gary tell the representative that he was divorced and remarried, and that he needed to change the beneficiary on his policy, as well as the spouse rider and child rider. This statement manifested Gary's intent to change the beneficiary on his policy and was therefore admissible under the hearsay exception found in Rule 803(3) . . . .

Finally, the testimony given by Velton Fulton, Marvin Hughes, Thelma Hare, and Judy Monday, regarding statements that Gary made to them that Ronda would have the proceeds of his life insurance to pay off the debts of his business, was also admissible under Rule 803(3). These statements evidenced Gary's belief that Ronda was the beneficiary of his life insurance policy and his intention that she be entitled to the proceeds of that policy. *Generally speaking, statements of a declarant's belief are not admissible under Rule 803(3), unless the statements relate to the execution, revocation, identification, or terms of the declarant's will. This court has recognized that provisions in life insurance contracts with reference to beneficiaries or changes in beneficiaries are in the nature of a last will and testament and, therefore, "are construed in accordance with the rules applicable to the construction of wills." See American Found. Life Ins. Co. v. Wampler*, 254 Ark. 983, 986, 497 S.W.2d 656, 658 (1973). As such, the testimony from the foregoing witnesses was properly admitted by the trial court under Rule 803(3).

*Id.* at 447–48 (emphasis added).

Thus, *Primerica* holds that in Arkansas, a deceased insured's oral statements to several people concerning that insured's future intentions to change the beneficiary in an insurance contract in favor of a another are admissible to resolve disputes as to who is the proper beneficiary. The appellants' argument in their reply brief that *Primerica* is not relevant because *Primerica* did not involve a POA is misplaced. The involvement of a POA is not controlling. The issue is whether oral statements from an unavailable declarant (Niki) may be considered to determine the proper beneficiary of a life insurance policy. We follow the Arkansas Supreme Court's precedent that

such statements are an exception to the hearsay rule and therefore hold that the district court properly admitted the affidavits that Buckley submitted.

## B. *Summary Judgment*

Having concluded that the district court properly admitted the affidavits Buckley submitted we turn to whether the district court properly granted Buckley's summary judgment motion. The appellants argue that the district court erred in granting summary judgment for Buckley because Buckley did not establish the absence of undue influence beyond a reasonable doubt and that material facts remain in dispute. Buckley asserts in response that she submitted enough proof to demonstrate Niki's intent to change the beneficiary to be entitled to summary judgment and no material facts remain in dispute.

As stated *supra*, Part II.A, Buckley must overcome a presumption of undue influence by submitting evidence that proves a lack of undue influence beyond a reasonable doubt. Buckley submitted three affidavits in support of her motion, including her own, and we hold that evidence of Niki's intent contained in these affidavits is not controverted by the appellants' evidence. Appellants failed to meet proof with proof. *See Flentje v. First Nat'l Bank of Wynne*, 11 S.W.3d 531 (Ark. 2000) ("When the movant makes a prima facie showing of entitlement to a summary judgment, the respondent must discard the shielding cloak of formal allegations and meet proof with proof by showing a genuine issue as to a material fact.").

Once the moving party has properly supported its motion for summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party may not rest on mere allegations or pleading denials, but must "come forward with specific facts showing that there is a genuine issue for trial." *Id*. at 587 (internal quotations and citation omitted). "Only disputes over facts that might affect the outcome of the suit

under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id*.

To defeat Buckley's summary judgment motion, the appellants were required to supply some relevant evidence that refuted Buckley's affidavit evidence and warrant a trial on disputed facts. They did not. The appellants countered Buckley's affidavits containing specific representations of Niki's intent with Eric's affidavit and a portion of one of Niki's medical records. The medical record stated that following Niki's March 2006 hospitalization she wished to be discharged to her sons' care and did not want to be "controlled by her sister any longer." Arguably, this provides some evidence that Niki viewed her sister as controlling but alone does not show that Niki did not competently and voluntarily change the ownership of her insurance policy and subsequently acquiesce in the change of the policy's beneficiary to Buckley. None of the evidence that the appellants supplied—including the medical record—refute the numerous statements that Niki made which indicated Niki's intent to change the beneficiary designation on her policy.

The appellants argue that Buckley's alleged facts are disputed. However, based on our review the only truly "disputed facts" are immaterial to the dispositive issue—whether Niki intended to change the ownership of her policy and ultimately its beneficiary. For example, Buckley claims that the triggering event for the change in beneficiary status was a fight that resulted in Eric dropping off Niki at Niki's house and refusing to further care for her. Eric states that he dropped Niki off because he ran out of Family Medical Leave Act time and he could not care for her any longer. Additionally, the appellants refer to what they allege to be internal problems with logic and consistency with Buckley's affidavit. However, assuming the appellants' version of everything that they assert, as we must in considering a motion for summary judgment, the appellants still present nothing to controvert Niki's statements that she wanted to change the beneficiary of her policy. Nor do the appellants provide

evidence of actions on Buckley's part that would constitute undue influence, duress or other improper conduct. On the other hand, Buckley submitted affidavits showing her actions were authorized and consistent with Niki's stated intentions. Therefore, we hold that Buckley rebutted the presumption of undue influence with the affidavits in support of her motion for summary judgment and there are no material facts left in dispute, making summary judgment appropriate.

### III. *Conclusion*

Accordingly, we affirm the decision of the district court.

_____